## TRIMMIER v. THOMSON.

1. BILL FOR PRINTING—ATTORNEY'S LIABILITY.—Where an attorney procured printing to be done in a cause in which he was engaged, he is personally responsible to the printer for the work so done, unless the attorney shows that he stipulated that he was contracting with the printer as agent for his client.

2. CHARGE ON FACTS.—Counsel cannot complain of a statement made by the trial judge, in the hearing of the jury, in answer to an observation of counsel, which was beyond a proper reply to a question that had been asked by the judge.

3. EVIDENCE—PARTY DECEASED.—In action against an administrator, plaintiff may testify as to the mere fact that he had conversations with intestate, and may fix their date.

4. IBID.—IBID.—Testimony by plaintiff, that the intestate of defendant knew that plaintiff had done the printing work sued for, and the amount of the account therefor, had brought the work to plaintiff's office, and was there every day while the work was being done, was not incompetent, it not being made to appear that the plaintiff knew these facts by communications from the deceased.

5. IBID.—IBID.—In such action, section 400 of the Code does not prevent a plaintiff from testifying that he did not print the briefs and arguments for the parties to the causes, who were not shown to be dead, many of them being living witnesses at the trial.

6. IBID.—IBID.—Nor this same plaintiff from testifying, in contradiction of testimony given by defendant's witness, that this witness had given his note to deceased instead of to plaintiff, and that deceased had endorsed it to plaintiff.

7. IBID.—RELEVANCY.—In action by printer against lawyer for printing briefs and arguments, it is not incompetent for plaintiff to prove by an associated

lawyer that defendant had assumed all responsibility for printing, although such fact was not communicated to plaintiff, nor to prove by the clients that they had nothing to do with the printing, but had paid for it, and had made no contract with plaintiff.

8. EVIDENCE—DECEASED PARTY.—Section 400 of the Code does not prevent plaintiff from testifying that he sent the itemized account sued on to defendant's intestate.

9. IBID.—COMPETENCY.—A witness may be asked as to whether the words and manner of defendant, while printing was being done, was different from that of other persons having work done there, or was such as to indicate that he was having the work done for another.

Before WALLACE, J., Spartanburg, August, 1893.

Action by T. J. Trimmier against Martha J. Thomson, executrix of J. S. R. Thomson, deceased, commenced December 29, 1891. The case came to this court on the following exceptions:

I. In allowing the plaintiff to testify that he had conversations with defendant's testator, and when the said conversations took place. II. In allowing the plaintiff to testify that defendant's testator knew that he (plaintiff) had done this work and that he knew the amounts charged for it. III. In allowing plaintiff to testify that while he was doing this work, defendant's testator was every day at his printing office, and that he was at his (testator's) office every day. IV. In allowing plaintiff to testify that defendant's testator brought cases and arguments to his place of business; that he (defendant's testator) gave him (plaintiff) directions, and that he (plaintiff) carried out those directions. V. In allowing plaintiff to testify that he did not print any of these briefs, arguments, and cases for either the plaintiff or defendant in the cases. VI. In allowing plaintiff to testify that Griffin had given his note to defendant's testator, and that defendant's testator had endorsed it to him (plaintiff). VII. In allowing W. S. Thomason, Esq., to testify defendant's testator had agreed to assume responsibility for the printing in the case of Woody v. Dean. VIII. In allowing Dr. Witherspoon to testify that he had nothing to do with the printing in the case of Witherspoon v. Watts, but had paid for it. IX. In allowing witnesses for plaintiff to testify that

they were parties to the cases in which the printing sued for had been done, but had made no contract with plaintiff in regard to the same. X. In saying to defendant's attorney, in presence and hearing of the jury, that the reason he had not been able to find any authority holding, that when an attorney carried work to a printer and ordered him to do it, at the same time disclosing the fact that he was an attorney and was acting as such, he would be individually liable to the printer for the work done, was that the lawyers always paid for it without being sued. XI. In charging the jury that when one acts as an attorney, disclosing the fact that he is so acting, and also the name of his client, he may, nevertheless, by his course and manner of dealing, without express agreement, give rise to a contract by implication to become individually liable for work done for his client. XII. In allowing plaintiff to testify that he made out the account sued on and sent it by another to be presented to defendant's testator, and that the account sent contained the items and amounts. XIII. In allowing the witness Hinnant to answer the following question: "What difference would there be in Col. Thomson's manner and words from that of any other person who was having work done there for himself?" XIV. In allowing the witness Hinnant to answer the following question: "State whether, or not, during all of this time you saw anything in Col. Thomson's manner, or heard him say anything, that would indicate that he was having this work done for any other person than himself?"

*Messrs. Carlisle & Hydrick,* for appellant.

*Messrs. Duncan & Sanders,* contra.

March 21, 1894.   The opinion of the court was delivered by

MR. JUSTICE POPE.   The plaintiff's action, in the Court of Common Pleas for Spartanburg County, against the defendant, sought to recover a debt of defendant's testator for printing, amounting to $647.90. After verdict for plaintiff and entry of judgment, defendant appealed. The grounds of appeal will appear in the report of the case. We will, therefore, consider

them so far as the questions raised by each require an answer by us.

It may be remarked, in the beginning, that the action involves the liability of an attorney, who procures a printer to print briefs and arguments in causes of his respective clients, to answer himself for the debt thereby contracted. In other words, does the printer, in such a case, look for payment to the attorney or to the attorney's clients, for whom the printing is done? All this, it seems to us, must depend upon the contract. If Thomson, as an attorney at law, contracted with Trimmier to print his clients' briefs and arguments, unless in such contract he stipulated that he was having such work done as the agent of his clients as his principals, he will be liable to pay for such work. It is true, an attorney at law is the agent of his clients, but only in the sphere of his agency in the transaction of his clients' law business. Such an attorney has no power, as such attorney, to bind his principal except within the sphere of his special agency. If he acts beyond such sphere, he must have special authority, and to make his acts, as such special agent, binding on third parties, they must have notice of such special power. When Mr. Thomson, as an attorney, contracted with Mr. Trimmier for this printing he was bound in law, either to have contracted for himself or for another. The legal result is, that such a contract is his, until he makes the contrary appear. To hold otherwise would require that courts should hold clients responsible for any contracts made by their attorneys, whether such clients authorized such contracts, or not. These wholesome truths had better be observed in the conduct of lawyers with their clients, and by third parties as well.

Thus much we say preliminary to the consideration of exception 10. Here the appellant states his ground of appeal in these words: "The Circuit Judge erred in saying to defendant's attorney, in presence and hearing of the jury, that the reason he had not been able to find any authority holding that when an attorney carried work to a printer and ordered him to do it, at the same time disclosing the fact that he was an attorney and acting as such, he would be indi-

vidually liable to the printer for the work done, was the lawyer always paid for it without being sued." We have reproduced the exact language of this exception because, unwittingly, we are sure, the appellant has done a grave injustice to the presiding judge, Judge Wallace. Now, such language as is attributed to the judge, did not fall from his lips during the course of the trial. Here is what the "Case" discloses as the extent to which he did go, and we are bound by the "Case." On page 27 is the following: "His honor asked defendant's attorney, in substance, 'have you any authority, that when a lawyer carries work to a printer and tells him to do it, and nothing more is said, that he is not bound individually to pay for it?'" Now the "Case" discloses that this question was asked by the judge while an argument was pending before him as to the admissibility of certain testimony, and in which argument it was being contended that a client and not the attorney was liable for printing a brief or argument, when it was known by the printer that such attorney was a lawyer, and was acting as such. The pertinency and propriety of the question asked by the judge is thus made manifest. But mark the sequel. The attorney replied, "No, your honor." There he ought to have stopped, but, in his laudable zeal for his client, he *voluntarily adds* at once these words, "neither have I been able to find any authority holding that where a lawyer carries work to a printer and orders him to do it, and discloses the fact that he is an attorney, and the same is for his client, he is bound individually to pay for it." Then it was that his honor replied, "No, and the reason is that the lawyer always paid for it without being sued." It is thus manifest that the attorney for appellant brought these words from the judge by answering a question never asked him by the judge. The result to the appellant must be that he cannot complain of this last observation of the judge no more than if he had made an improper request to charge, and the judge had charged as requested. Each instance belongs to the same class.

The *first exception* relates to the plaintiff being allowed to testify that he had conversations with defendant's testator, and the date of such conversations. It will be observed that

9—41

nothing beyond the facts that conversations were had and the time when they occurred, were allowed. Was there any conversation or transaction with the deceased by the plaintiff thus admitted in testimony? This court has held in *Richards* v. *Munro*, 30 S. C., 289, that the question, "Did Jas. A. Tucker before his death give you any directions about this note, as to what to do with it?" did not impinge upon section 400 of the Code. In *Williams* v. *Mower*, 35 S. C., 313, this decision of *Richards* v. *Munro*, *supra*, was reaffirmed, and the court also decided that the plaintiff, Robert G. Williams, was competent to testify to the fact that he had conversations with his deceased brother, the *intestate*, but was not allowed to disclose what such conversations were. The exception must be overruled.

In the *second exception* it is complained that the plaintiff was allowed to testify to the fact that the defendant's testator knew that he, the plaintiff, had done the work, and knew the amounts charged for it. If this fact had been based upon communications from the deceased to the witness, it would have fallen within the inhibition of section 400 of the Code, but this is not the only mode by which this information as to deceased's knowledge could be obtained by such witness; for instance, he may have heard the deceased admit such fact while in conversation with some one else in his (witness') presence. The method of appellant should have been at the trial to ascertain from this witness if he based his conclusion that deceased knew these facts from any conversation or transaction with him, and if so, to have moved the Circuit Judge to strike such testimony out. Appellant's *third exception* complains that plaintiff was allowed to testify to the fact that every day during the time that printing was being done, he was at deceased's office or the deceased was at witness' office. These are facts that, under the decision just announced in considering the second exception, it was competent for plaintiff to include in his testimony. Nor do we think there is merit in appellant's *fourth exception*, that plaintiff was allowed to testify that defendant's testator brought briefs and arguments to his printing office, that defendant's testator gave instructions as to his work thereon,

and that witness carried out those instructions. These facts seem to fall under the decision of the second exception.

*As to the fifth exception*, which complains that plaintiff was allowed to testify that he did not print these briefs and arguments for either the plaintiff or defendant in the respective cases, we cannot see why plaintiff should have been deprived of this privilege. Certainly the rule embodied in section 400 aims to prevent testimony "as to communications and transactions with persons deceased," in the cases therein enumerated, on the ground that it is against public policy to allow witnesses to testify as to matters, when if such testimony is untrue, it cannot be contradicted. Many of these parties, plaintiff and defendant, were alive, and could have contradicted the witness if his testimony was untrue. It may be that all of such parties were then alive. A goodly number of them appeared as witnesses in this cause. The exception is overruled.

*As to the sixth exception*, where it is complained plaintiff was allowed to testify that Griffin had given his note to defendant's testator, and that defendant's testator had endorsed it to plaintiff. The "Case" shows that defendant introduced Griffin as her witness, and he had testified that he gave plaintiff the note in question. Plaintiff denied this fact, and asserted that, on the contrary, Griffin had first given the note to deceased, and thereafter it was endorsed to him. From two standpoints it seems to us it was competent for plaintiff to so testify. In the first place, in contradiction to the witness Griffin. While death of the opposite party seals the lips of the other living party, yet it does not so operate that plaintiff cannot impeach by his own testimony the accuracy of a living witness. In the second place, it has always seemed to us that a proper construction of section 400 of the Code will allow a plaintiff to testify fully as to communications and transactions with a person deceased, if and whenever the personal representative of such deceased persons opens the door by giving testimony herself to such a communication or transaction. See the language of the latter part of section 400 of the Code.

We do not think there is merit in the *seventh exception*, in relation to the competency of W. S. Thomason, a witness for

plaintiff. From the "Case" it appears that Thomason and defendant's testator had been attorneys in one of the causes where the plaintiff had printed brief and argument. The plaintiff never made any charge against Thomason, witness, for such printing, and while being examined, this witness testified that Mr. Thomson, the deceased, assumed the responsibility of the printing of those papers, but he did not say he communicated with plaintiff. The relevancy of this testimony is not very apparent. Otherwise we do not see that its admission was freighted with any harm to defendant. Nor do we see any force *in the eighth exception,* in the objection to the competency of the witness, Dr. Witherspoon, when he stated that he had nothing to do with the printing of the case of Witherspoon *v.* Watts, but had paid for it. If this was a fact, as no doubt it was, why should witness be deprived of his privilege of saying so? So, too, the *ninth exception,* relating to the witnesses for the plaintiff who had been parties to the cases where briefs had been printed, and where it was objected to any testimony from them that they had contracted with the plaintiff in reference thereto, seems to us to be without strength.

As to the *eleventh exception,* which is in these words: "In charging the jury that when one acts as an attorney, disclosing the fact that he is so acting, and also the name of his client, he may, nevertheless, by his course and manner of dealing, without express agreement, give rise to a contract by implication to become individually liable for work done for his clients." We have hereinbefore expressed our views as to the action of an attorney acting outside of the sphere of his duties as such attorney in behalf of his clients, as preliminary to our consideration of the tenth exception herein, and, under those views, we agree with the Circuit Judge. Clearly a lawyer, as such, making a contract by implication that will bind himself personally, is not hard to imagine. Let such an one go to a printer, without pretending to be clothed with such authority by his client, and order such printer to print briefs or anything else. By such conduct when the work is done he has contracted by implication that he will pay for such printing.

*Exception 12* complains that plaintiff was allowed "to testify that he made out the account sued on, and sent it by another to be presented to defendant's testator, and that the account sent contained the items and amounts." Now what valid objection can there be to the competency of this testimony? It related to facts within witness' knowledge, and did not trench upon section 400.

*Exceptions 13 and 14* complain that the witness Hinnant was allowed to answer the following questions: "What difference would there be in Col. Thomson's words and manner from that of any other person who was having work done there for himself?" "State whether or not during all this time you saw anything in Col. Thomson's manner, or heard him say anything that would indicate, that he was having this work done for any other person than himself?" From the "Case" it appears that Mr. Hinnant now resides in Atlanta, Ga., but that he had been in the employ of the plaintiff for about six years, from 1882 up to 1888; that he frequently saw Col. Thomson in the printing office of plaintiff during those years, bringing work to be printed and conversing about such work. Such work consisted of briefs and arguments. He was not able to state that there was any contract between the parties in regard to this printing, nor whether he, Col. Thomson, was personally responsible therefor. When printing was finished, it was delivered to Col. Thomson. The objection urged to the testimony is that the witness was required to express an opinion. The first question does not reach to the extent of giving an opinion, but rather looked to the contrasting the manner of Col. Thomson with other patrons of the office, and giving the result of such contrasting. His answer showed his appreciation of the question, for he states that there was no difference either in words or manner. These are facts. So, too, as to the second question, we think the jury had a right to know how he acted and how he spoke of this work. While not much weight could be attached to these answers, we may yet imagine that where a contract by implication is to be considered by a jury, it is not well to shut off words or acts of the parties to such contract.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.