8 So.2d 171

### BIRMINGHAM ELECTRIC CO. v. COCHRAN.

### 6 Div. 909.

Supreme Court of Alabama.

May 14, 1942.

Lange, Simpson, Brantley & Robinson, of Birmingham, for appellant.

E. M. Friend, Jr., of Birmingham, for appellee.

BROWN, Justice.

This action on the case is by a passenger against the carrier for damages resulting from personal injury alleged to have been proximately caused by the negligence of the carrier's agents or servants in charge of the operation of one of its street cars in the City of Birmingham.

The case was submitted to the jury on the counts of the complaint charging simple negligence, and the defendant's plea of not guilty, the trial resulting in a judgment and verdict for the plaintiff for $4,000.

The evidence offered by the plaintiff goes to show that on May 10, 1940, about 4 P.M., immediately before the defendant's street car arrived at the regular stopping place at Gate City Junction, she with a friend and another passenger—a gentleman —were standing in the safety zone for passengers waiting for the car; that the car which was equipped with a side door, approached and stopped, and the door opened. That she immediately attempted to enter the car by placing her right foot on the step, which she referred to as "the running board" took hold of the handle-bar for passengers, and as she attempted to rise, the car made a lurch forward and at the same time the door began to close causing her to release her handhold, and in consequence her entire weight was thrown on her left foot causing her left ankle to career and she was thrown or fell forward, and but for the gentleman passenger catching her, would have fallen alongside the car, and probably under it. That her ankle was badly strained and a bone in her foot was broken, and from this injury she has suffered, to a more or less degree, up to the trial. The expert testimony tends to show that she has suffered a 35% loss of the use of her ankle. The evidence further goes to show that she is a seamstress and worked for her living and in her work used a sewing machine which

required the use of the left foot. Her right foot had also been injured by an operation. She was sixty-four years of age and a widow at the time of her injury.

The defendant's evidence goes to show that it had no record of any such occurrence, and examined all of its conductors operating cars in its service on the date of the alleged injury, producing their trip sheet, and there was no mention of any such occurrence on said trip sheet, which according to the rules and practices of the defendant was made for each trip, and required all accidents to be reported. The motormen were not examined, but they each and all appeared to have signed the trip sheets.

There is an absence of evidence showing or tending to show that attorney Mudd, though it be assumed that he had been employed by plaintiff as her attorney, had special authority from his client to invite compromise of her claim, and in the absence of such proof Mudd's letter to the defendant was not within the general or apparent scope of his authority. An attorney is the special agent of his client, whose duties, usually confined to the vigilant prosecution or defense of the suitor's rights. The power of an attorney is not co-equal, co-extensive, or the equivalent of that of the client. "He is, as has been said in numerous decisions of this court, *a special agent,* limited in duty and authority to the vigilant prosecution or defense of the rights of the client. He can enter into no bargains or contracts, though he may make agreements in writing touching the course of proceedings in pending suits, or the issue or return of executions on judgments he may have obtained, which will bind the client." Robinson v. Murphy, 69 Ala. 543; National Bread Co. v. Bird, 226 Ala. 40, 145 So. 462.

The compromise of a client's action is not within the scope of an attorney's general authority. Special authority from the client is essential. National Bread Co. v. Bird, supra; 22 C.J. 393, § 468.

The purpose of the proffered evidence —the statement in Mudd's letter—was to impeach the plaintiff's testimony, and in the absence of such special authority, it was mere hearsay. Floyd v. Hamilton, 33 Ala. 235.

Hence the court did not err in sustaining the plaintiff's objection thereto.

The defendant's counsel in argument to the jury stated: "Gentlemen, we called these men in, made an investigation of the men on that line, and they said they knew nothing about the occurrence at all. We brought the men up here, the conductors on that line who were there before 4:00 o'clock and after 4:30. With those cars running every few minutes, of course there were several." In the closing argument plaintiff's counsel said: "Gentlemen, if they are going to bring up these witnesses and overwhelm us with the great weight of the testimony, why didn't they do more and go 100% of the way and bring the motorman up here too."

The defendant objected to this as improper argument, because the names of the motormen were furnished to plaintiff by the defendant's answers to interrogatories and the motormen were as available to the plaintiff as witnesses as to defendant.

The court in response to the objection instructed the jury: "Gentlemen, a lawyer can argue the evidence, any reasonable inference that can be drawn from the evidence. If a lawyer argues any inference from the evidence which you don't think is reasonable you don't consider the argument. It is a question for you to decide whether the lawyer is arguing a reasonable inference. He has a right to argue the evidence and the reasonable inference."

We are of opinion the argument of plaintiff's counsel was invited by the argument of the defendant's counsel, and the court did not err to reverse.

Moreover under our most recent rulings no duty rested upon the plaintiff to summon and place on the stand witnesses to disprove her case, witnesses whose testimony was subject to bias in favor of the defendant because of their relation as employees. Alabama Power Co. et al. v. Talmadge, 207 Ala. 86, 95, 96, 93 So. 548; Waller v. State, ante, p. 1, 4 So.2d 911, 916.

There was evidence going to show that the plaintiff suffered a partial permanent loss of her earning capacity, and there was also evidence showing the amount of wages she usually earned in the work she had trained herself to do. In these circumstances defendant's special charge 12, the basis of assignment of error 4, which denied plaintiff's right to recover "on account of any loss of wages *or earnings* from

her employment" was properly refused. [Italics supplied.]

As observed in Bankers' Mortgage Bond Co. v. Sproull, 220 Ala. 245, 246, 124 So. 907, 908, "in an action of tort, plaintiff may recover for the impairment of his earning capacity and for time lost from his business by reason of the wrong complained of. Sparks v. McCreary, 156 Ala. 382, 47 So. 332, 22 L.R.A.,N.S., 1224." And evidence of average earnings is admissible as affording some basis for the estimate of damages in such cases. Strickland v. Davis, 221 Ala. 247, 128 So. 233.

The charge at best had a tendency, without explanation, to mislead the jury and the court did not err to reverse in refusing it. Piano v. State, 161 Ala. 88, 49 So. 803.

The defendant's witness, G. A. Swanzy, testified:

"I am a W P A employee. I have some records here that I did not have with me yesterday. Those records are kept in the regular course of business. *If those records are kept correctly,* they will show if any complaint was made of any disability by any one working for the W P A. Those records were kept under my supervision and they cover the period for the year 1940. * * * I am not testifying anything about Mrs. Cochran's condition when she worked out there, I did not see her and do not know anything about her condition. Any information that I have here based on those records comes from what somebody else made out and turned over to my office, and not what I made out myself. I had never seen those records until I was subpoenaed in this case." [Italics supplied.]

The "records" referred to by the witness were offered as evidence, to quote from appellant's brief "for the purpose of showing that the plaintiff, while complaining during the year 1940 and in the early part of 1941, of other disabilities and suffering, never made one complaint so far as the records show of suffering any disability from her type of work on account of any injury to her left ankle. * * *

"The records were also offered to show that on October 14, 1940 her employment was terminated because of 'suspension of unit.'"

Appellant's counsel state: "We have no authority in support of our contention that the records should be allowed in evidence."

Our attention has not been called to an act of Congress or rule made in pursuance thereof, or statute of Alabama, and we have discovered none except Code of 1940, Title 7, § 415, not in force at the time of the trial, that authorized the keeping of any such record, or the admission of such record as evidence. In the absence of such statute or rule there is no presumption of its correctness; nor has it been shown to be correct. Its contents are not therefore within any exception to the rule which excludes hearsay. Seals v. United States, 5 Cir., 70 F.2d 519; Martin v. Hall, 72 Ala. 587; Wilson v. Johnson, 152 Ala. 614, 44 So. 539.

In view of the evidence showing that plaintiff suffered partial permanent disability affecting her ability to work and earn her livelihood, and her physical suffering; that the trial court and jury observed her condition, advantages not afforded by this record, we are not able to satisfactorily affirm that the damages awarded are grossly excessive, and that the recovery should be reduced.

Affirmed.

GARDNER, C. J., THOMAS and FOSTER, JJ., concur.