George A. MONICK and David Kahn, Appellants,

v.

Ben Ivan MELNICOFF and John B. Poindexter, Appellees.

No. 2184.

Municipal Court of Appeals for the District of Columbia.

Argued May 12, 1958.

Decided Aug. 22, 1958.

———◆———

Katherine M. Staley, Washington, D. C., for appellants.

Ben Ivan Melnicoff, Washington, D. C., and John B. Poindexter, appellees, pro se.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

This appeal raises the question of an attorney's personal liability to pay the cost of a stenographic transcript ordered during the course of a proceeding in which the attorney appears on behalf of his client. Before stating the facts of this particular case we shall discuss the general principles of law on the subject.

■■■ The question usually arises in one of three situations. The first of these is when the attorney in ordering the transcript expressly either assumes or disclaims personal responsibility for the cost. Such cases present little difficulty. Clearly an attorney may bind himself to pay for a transcript even though it is to be used solely for the benefit of his client.[1] And it is equally clear that an attorney in ordering a transcript may avoid personal responsibility by making it clear that he is ordering for his client and on the credit of the client.

■■■ The second situation arises when there is a dispute as to whether the attorney in ordering the transcript undertook to be personally responsible or acted merely as agent for his client, pledging his client's credit and not his own. These cases present questions of fact for determination by the trier of the facts.[2]

The third situation arises when, in ordering the transcript, nothing is said by either the attorney or the reporter regarding whom the reporter shall look to for payment. This is the difficult situation and the courts are not in agreement as to the applicable principles of law.[3] The question has arisen probably more often with respect to the cost of printing records and briefs rather than the cost of stenographic transcripts. We see no material distinction between these types of cases and treat them as the same.

One line of authorities takes the position that if the attorney is known to the reporter

1. Daniels v. Hand, 97 Misc. 418, 161 N.Y.S. 213.

2. Van Valkenburgh v. Van Doren, 86 Misc. 46, 148 N.Y.S. 86; Messenger Publishing Co. v. Walkinshaw, 102 Pa.Super. 445, 157 A. 18; Cowan v. Hulse & Allen, Tex. Civ.App., 273 S.W. 603.

3. Many of the cases are collected in the annotation in 100 A.L.R. 533.

or printer to be an attorney representing a client, then the attorney acts as agent for a known principal and is not personally liable unless he agrees to be personally bound. Thus, in Loder Appeal Press v. Peerless Sugar Co., 278 App.Div. 737, 102 N.Y.S.2d 820, 821, 822, it was said:

"The law is well settled that an attorney's negotiations for work to be done in a law suit is the act of an agent for a known principal and for the expense of that service the agent does not become personally responsible." [4]

Another line of authorities holds that when an attorney orders printing or reporting, although known to be acting as an attorney, he becomes liable unless he makes it expressly known that he is ordering such work as agent for his client. Thus, in Trimmier v. Thomson, 41 S.C. 125, 19 S.E. 291, 292, it was said:

"If Thomson, as an attorney at law, contracted with Trimmier to print his client's briefs and arguments, unless in such contract he stipulated that he was having such work done as the agent of his clients as his pincipals, he will be liable to pay for such work." [5]

■ The effect of the first line of authorities appears to be that in these situations the attorney is not liable in the absence of his express agreement to be bound; and the second line appears to hold that the attorney is liable in the absence of his express declaration to the contrary. The first would put the burden on the printer or reporter to obtain the attorney's personal promise to pay; the second would put the burden on the attorney to personally disclaim responsibility. It appears to us that this jurisdiction is committed to the second—and perhaps minority—rule.

In Judd & Detweiler, Inc., v. Gittings, 43 App.D.C. 304, 310–311, a firm of attorneys were held personally liable for the cost of printing briefs ordered by them in cases in which they appeared as counsel. The court refused to apply the general rule of agency that one who contracts with the agent of a known principal cannot hold such agent responsible, and reached the following conclusion:

"We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client. This applies not only to obligations incurred by the attorney for actual costs attending the litigation, but to the necessary expenses of attorneys, including the printing of briefs, which are not chargeable as costs in the case."

It is true that in the Judd & Detweiler case reference was made to a custom existing between the attorneys and the printing firm, but as we read the decision the existence of the custom played no part in the court's announced "just and equitable rule of law." In the light of that rule we now turn to the particular facts of this case. We may add, if we have a choice in the matter, we also think the rule to be just and equitable. If an attorney in ordering a transcript or brief does not intend to bind himself personally, he may avoid responsibility by making his position clear. The reporter or printer, then on notice of the nonliability of the attorney, may take such steps as he feels necessary for his protection before extending credit to a client whose credit standing and responsibility are often wholly unknown to him.

4. See also Petrando v. Barry, 4 Ill.App.2d 319, 124 N.E.2d 85; Inland Printing & Binding Co. v. Elam, Mo.App., 240 S.W. 823; Elder v. Eastwood, 73 Colo. 489, 216 P. 542.

5. See also Batavia Times Pub. Co. v. Hall, 129 Misc. 197, 221 N.Y.S. 89.

■ The record shows that appellee Melnicoff, a practicing attorney in this jurisdiction, was engaged to represent two clients, Aero Finance Corporation and Peninsular Air Transport, at certain hearings conducted by the Civil Aeronautics Board; that he was not able to attend some of the hearings and recommended appellee Poindexter, also an attorney but of limited private practice, to both clients, and as a result Poindexter made an independent contract with each client. The trial court ruled, and we think properly, that there was no evidence of a partnership between Melnicoff and Poindexter and that the liability of each must be treated independently, and we shall so treat them. Preliminary to that discussion, we may state that we see no material difference, in a situation of this sort, between an administrative hearing and a court proceeding. Our question is whether the trial court correctly applied the Judd & Detweiler rule in holding that neither attorney was liable.

■ With respect to Melnicoff, the exhibits show that in two hearings (Dockets Nos. 6124 and SR 1179) he entered his appearance for Peninsular Air Transport, and beneath his appearance, under the heading "Order for Transcripts," he personally signed an order addressed to appellants, who are the contract reporters for the Civil Aeronautics Board, for a copy of the transcripts. He testified that he ordered the transcripts as counsel for his clients, that he received them, and that he was billed for them. Except for the placing of the order, there is no claim by appellants that Melnicoff expressly agreed to be personally liable, and Melnicoff makes no assertion that he personally disclaimed responsibility. On this state of facts, under the rule announced in the Judd & Detweiler case, Melnicoff was personally liable because of "the absence of express notice to the contrary."

■ With respect to Poindexter, the exhibits show that in one case (Docket No. SR 2–1179) he entered his appearance for Aero Finance Corporation, but did not sign the order for the transcript. The name of Aero Finance Corporation was typed in as the one ordering the transcript with instructions to "Bill to" Aero Finance Corporation. In the other case (Docket No. SR 2–1180), Poindexter entered his appearance for Peninsular Air Transport and signed the order for the transcript with instructions to "Bill to" Peninsular Air Transport. He testified that he did not order the transcripts, did not receive them, although he saw transcripts on the table each day, did not use them, and was never billed for them. On this evidence, we cannot say the trial court was in error in finding, as it did, that with respect to Poindexter the appellants had the required notice to the contrary and therefore no recovery could be had against him.

Judgment in favor of appellee Melnicoff reversed; judgment in favor of appellee Poindexter affirmed.