MURDOCK, Judge.
This appeal presents a single principal legal question: when may an attorney be liable for nonpayment of the costs of a transcript prepared by a court-reporting service?
The record reveals[1] that David A. Sullivan (“the attorney”) represented W.L. Williams (“the client”) in proceedings before the United States Merit Systems Protection Board (“the MSPB”) during September 1997. After a 16-hour hearing had taken place, and the presiding administrative law judge had solicited briefs, counsel for the United States Equal Employment Opportunity Commission (“EEOC”) contacted Toby Chambers, an employee of North Alabama Reporting Service[2] (“the court-reporting service”), who had made a record of the hearing, and requested a transcript of the hearing. Chambers then telephoned the attorney’s office; the attorney’s secretary told him that the attorney was “not available.” Chambers then asked *624 the attorney’s secretary whether the attorney would like to have a transcript. The secretary asked Chambers to wait a moment, placed Chambers’s telephone call on “hold,” and asked the attorney whether he wanted a transcript. The attorney told the secretary that he did want a transcript, and she in turn informed Chambers.
Employees of the court-reporting service then prepared and sent an 801-page transcript of the hearing to the attorney, who testified that he “threw it in a box somewhere” and that he “probably” did so “because I knew we were going to get a transcript from the [MSPB].” At the same time, a bill for the services of the court-reporting service was sent to the attorney; however, the attorney did not pay that bill.[3] After a year had passed without payment, the owner of the court-reporting service sent a “rebill.” The owner then telephoned the attorney to request payment; the attorney directed the owner of the court-reporting service to send a bill to the client because, he said, the client was also an attorney in private practice and would “get the bill paid.” However, neither the attorney nor the client paid the bih.
In December 1998, the court-reporting service brought a civil action against the attorney and the client in the CuUman County District Court, seeking $3,264 plus interest for services rendered pursuant to an implied contract. The attorney and the client moved for a change of venue to Jefferson County, which the court-reporting service opposed on the stated basis that the defendants had “submitted to” venue in Cullman County. The case was transferred to the Jefferson County District Court, which entered a judgment in favor of the court-reporting service and against both defendants for $3,470.32. The defendants appealed to the Jefferson County Circuit Court; on that appeal, the court-reporting service amended its complaint to assert a claim under the Alabama Litigation Accountability Act (“ALAA”). The court-reporting service moved for a summary judgment, but the trial court did not rule on the summary-judgment motion. The attorney moved for a summary judgment, arguing that he had no liability to the court-reporting service; the trial court denied that motion and later denied the attorney’s motions seeking reconsideration of that denial and challenging the court’s subject-matter jurisdiction.
The implied-contract claim was then tried before a jury; the court denied the attorney’s motions for a judgment as a matter of law made before the trial began, at the close of the court-reporting service’s case, and at the close of all the evidence (see Rule 50, Ala. R. Civ. P.). The jury rendered a verdict in favor of the court-reporting service and against the attorney and assessed damages of $801; however, the jury rendered a verdict in favor of the client. After the trial court had entered a judgment on that verdict, the court-reporting service filed a motion to assess costs and to award fees under the ALAA, and the defendants moved to alter, amend, or vacate the judgment; however, these motions were denied. The attorney appeals.
The attorney has identified seven issues in his appellate brief. The principal issue, however, is whether the attorney was properly held to be subject to liability to the court-reporting service. The attorney states that he acted as a simple agent for a disclosed principal, citing Petrando v. Barry, 4 Ill.App.2d 319, 124 N.E.2d 85 (1955), *625 for the proposition that he should not be held liable on a contract that, he says, he made “for his client,” where he made no express pledge of personal responsibility. The court-reporting service disputes the “disclosure” element, reiterating that the attorney simply replied “yes” when asked if he wanted a copy of the MSPB transcript.
Our own review of the authorities in this area reveals that Petrando, which held an attorney not liable to a printer for the costs of briefs and other documents filed in connection with appellate proceedings, does not represent the unanimous view of modern American law on this point. Indeed, the “attorney as simple agent” approach of Petrando has undergone considerable criticism. For example, 11 years after Petrando was decided, the Supreme Judicial Court of Massachusetts considered a case more factually similar to this one, stating the issue as “the liability of a lawyer for the stenographic report of testimony ordered by him without explicit agreement with the reporter in a case to which his client is a party.” Burt v. Gahan, 351 Mass. 340, 341, 220 N.E.2d 817, 818 (1966). The Massachusetts court addressed that issue as follows:
“In the consideration of this case one must not lose sight of the obvious fact that the defendant was trial counsel for a party to the petition.... While in a broad sense counsel may be an agent and his client a principal, there is much more involved than mere agency. The relationship of attorney and client is paramount, and is subject to established professional standards. In short, the attorney, and not his client, is in charge of litigation, and is so recognized by the court. As was said in Judd & Detweiler, Inc. v. Gittings, 43 App. D.C. 304, 310-311 [D.C.Cir.1915], which concerned the printing of briefs on appeal: ‘The attorney usually determines what steps are to be taken in his client’s interest, and the acts of the attorney in the conduct of litigation are binding upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client. This applies not only to obligations incurred by the attorney for actual costs attending the litigation, but to the necessary expenses of attorneys, including the printing of briefs, which are not chargeable as costs in the case.’ To similar effect, see Monick v. Melnicoff, 144 A.2d 381 ([D.C.1958]); Heath v. Bates, 49 Conn. 342, 344-346 [1881]; Trimmier v. Thomson, 41 S.C. 125, 128, 19 S.E. 291[, 292 (1894) ]; Cocks v. [Bruce] Searl [ & Good], 21 T.L.R. 62 [K.B. Div.1904].”
351 Mass. at 342-43, 220 N.E.2d at 818-19. Burt then acknowledged Petrando as representing “a contrary view of the question,” but deemed it to be “less persuasive,” noting that “[t]here is no hardship in the rule we adopt, as it would be a simple matter for the attorney to exclude himself from liability by a statement to that effect.” 351 Mass. at 343, 220 N.E.2d at 819.
Since Burt was decided, a number of courts in our sister states have agreed with its reasoning, in factually similar contexts. E.g., McCullough v. Johnson, 307 Ark. 9, 11-12, 816 S.W.2d 886, 888 (1991) (agreeing that the Burt view “reflects the trend by taking into account modern litigation practices ... [by] allowing] court reporters to confidently regard themselves as dealing with the attorney, not the client” in the absence of a disclaimer); see also Joseph M. Perillo, The Law of Lawyers’ Contracts Is Different, 67 Fordham *626 L.Rev. 443, 471 (1998) (collecting authorities and noting that “the modern approach is to hold the lawyer liable to ... court reporters[] and other litigation-support providers unless the lawyer makes it clear at the time the provider is retained that the provider must look only to the client”). As the Indiana Court of Appeals noted just two years ago, “it is only fair that an attorney with superior legal knowledge who actively seeks another’s services in connection with litigation bear the burden of clarifying his intent regarding payment.” Boesch v. Marilyn M. Jones & Assocs., 712 N.E.2d 1061, 1063 (Ind.Ct.App.1999) (also involving court-reporting service).
We believe that the approach outlined in these authorities comports with longstanding Alabama law regarding the relationship between attorneys and their clients:
“The power of an attorney is not coequal, co-extensive, or the equivalent of that of the client. He is, as has been said in numerous decisions of this court, a special agent, limited in duty and authority to the vigilant prosecution or defense of the rights of the client. He can enter into no bargains or contracts, though he may make agreements in writing touching the course of proceedings in pending suits, or the issue or return of executions on judgments he may have obtained, which will bind the client, unless he has specially authorized, or subsequently ratified them.”
Robinson v. Murphy, 69 Ala. 543, 547 (1881); accord, Birmingham Elec. Co. v. Cochran, 242 Ala. 673, 8 So.2d 171 (1942).
In this case, there is no evidence that the client specifically authorized or ratified the attorney’s conduct in requesting a transcript, while there was evidence from which the jury could have concluded that the attorney, before or at the time he indicated to the court-reporting service that he wanted the transcript, did not advise the court-reporting service that it was not to look to him for payment. Accordingly, we conclude that the trial court properly denied the attorney’s motions before, during, and after trial directed to this issue.
We briefly address the remaining issues raised by the attorney. While the attorney correctly notes that federal regulations provide for the MSPB to obtain transcripts from private court-reporting agencies and for parties in a proceeding before the MSPB to request transcripts directly from the MSPB for $.20 per page, and claims that that fact divested the trial court of jurisdiction, no authority has been cited that would prohibit a court-reporting service and an attorney from making other arrangements for preparation and delivery of transcripts of MSPB proceedings, much less that the federal regulations would “super-preempt” a state-law implied-contract claim. The attorney did not object to the contents of the trial court’s charge to the jury after it was given; thus, he has waived any objection to the court’s instructions. Rule 51, Ala. R. Civ. P.; Milliken v. South Realty Co., 628 So.2d 928, 931 (Ala.Civ.App.1993). Moreover, although the attorney contends that the jury’s verdict must have been based upon allegedly improper “custom and practice evidence,” we note that the complaint alleged a breach of (and the jury was charged concerning the characteristics of) an implied contract, which may, under Alabama law, arise from custom and trade usage. Freeman v. First State Bank of Albertville, 401 So.2d 11, 12 (Ala.1981). We further conclude that we are precluded from addressing the issue whether the evidence before the jury was sufficient to support its award of $801 *627 (which we note precisely equals $1.00 for each page of the transcript prepared by the court-reporting service) because the attorney did not assert that ground in his postjudgment motion. See Najor v. Pensacola Pools, Inc., 607 So.2d 294, 295 (Ala.Civ.App.1992). Likewise, the attorney never asserted to the trial court that he was entitled to relief from the judgment, based upon an alleged “fraud upon the court” that he asserts in this court. An appellate court will not reverse a judgment based upon an error not asserted in the trial court. See Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992).
In light of the foregoing facts and authorities, the trial court’s judgment based upon the jury verdict in favor of the court-reporting service is due to be affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

. As we must do, we have read the record in a light most favorable to the verdict of the jury in this cause. See Delchamps, Inc. v. Bryant, 738 So.2d 824, 831 (Ala.1999).

. This entity is also referred to in the record as "North Alabama Reporting Service, L.L.C.,” "North Alabama Reporting Services,” and "North Alabama Court Reporting Service.”

. The attorney later called Chambers and requested audiotapes of the hearing; Chambers made copies of the tapes and sent them to the attorney, along with a bill for $90. That bill was paid by the attorney three months later.