PITTMAN, Judge.
Beverly Wilmore and Charles Wilmore (“the Wilmores”) appeal from a judgment entered against them in a declaratory-judgment action that also determined Charles Wilmore to be in contempt of court.
Bradley Wilmore (“the former husband”) and Kendall Wilmore (“the former wife”) were divorced in September 2005 by a judgment of the Etowah Circuit Court. According to certain provisions in that divorce judgment, the former wife was awarded all right, title, and interest in the marital residence; in addition, the former wife was to satisfy the note secured by a mortgage on the marital residence.
In December 2006, the former wife filed a declaratory-judgment action seeking a judicial determination as to the proper amount necessary to pay off the note secured by the mortgage on the former marital residence, which was held by the Wil-mores, the former husband’s parents. In October 2007, the former wife filed a separate action seeking an adjudication that the former husband was in contempt of court for having refused to pay any child support or alimony since the divorce judgment had been entered. That litigation ran parallel to the declaratory-judgment action until May 2009, when the trial court consolidated the two cases for the purpose of scheduling a hearing on all pending claims. Following numerous continuances, the trial court conducted an ore tenus proceeding on November 9, 2009. Present at that hearing were the former wife, the former husband’s father, and counsel for the parties; the former husband did not appear.
On December 7, 2009, the trial court entered a judgment determining that the former husband was in contempt of court.[1] In addition, the trial court ordered the former husband’s father to produce certain documents relating to a family-farm trust and specific documents regarding the outstanding debt owed on the former marital residence; the trial court scheduled a final hearing in the declaratory-judgment action to be held in April 2010. Following additional continuances, the trial court rescheduled the final hearing for July 2, 2010. On June 30, the Wilmores filed a “notice of compliance” with the trial court; the next day, the Wilmores filed a motion to dismiss. Attached to that motion was a *704 copy of an Indiana quitclaim deed by which the Wilmores attempted to convey the former marital residence to the former husband and the former wife jointly; that deed specifically noted that “[t]he resolution of all indebtedness due and owing grantors from granteefs] ... having been resolved by the [Indiana] Circuit [Court] ... and embodied in the judgment issued therein, all grantors’ interests in and to the subject ... property are hereby wholly released.” The trial court denied the Wil-mores’ motion to dismiss and conducted a final hearing on July 2, 2010.
At the outset of that hearing, at which neither of the Wilmores attended, the Wil-mores’ counsel unsuccessfully attempted to withdraw. Although the former husband had been ordered to attend, he was also absent from the proceeding; the former wife was the only party to attend the hearing. At the outset of the hearing, the trial judge noted on the record that the former husband’s father had been ordered to appear at trial and to produce certain financial documents to aid the court in resolving the financial issues presented in the declaratory-judgment action. The judge also stated on the record that the former husband’s father had failed to provide the requested documents or to appear in court for the trial on the merits. The trial judge then recited the following facts: that the former husband’s father had lied to the court during the previous hearing, that he had been warned by the court that his failure to produce the requested financial documents in a timely manner would subject him to contempt sanctions, and that in the motion to dismiss he had attempted to divest himself of a purported interest in the former marital residence that had already been awarded to the former wife in the 2005 divorce judgment.
The trial court proceeded to hear arguments from the parties’ counsel as to the proper disposition of the case in the absence of the former husband and the Wil-mores. Testimony was adduced from the former wife as well. At the conclusion of that proceeding, the trial court determined that the Wilmores had attempted to interfere with the disposition of the former marital residence, which had been awarded to the former wife in the 2005 divorce judgment. Specifically, the trial court determined that the former husband’s father had previously admitted to having prepared fraudulent documents, had not provided the requested financial documents to the court, and had failed to attend the final hearing on the merits. Based on those actions, the trial court determined that the former husband’s father was in contempt of court and sentenced him to be incarcerated for 105 days; in the alternative, the trial court ordered the former husband’s father, in order to purge himself of contempt, to appear before the trial court with the requested financial documents and to submit to a full examination regarding those documents. In. addition, based upon the quitclaim deed that was attached to the Wilmores’ motion to dismiss, the trial court instructed the county clerk “to execute a clerk’s deed granting sole ownership, rights, title and interest” in the former marital residence to the former wife. Moreover, the trial court reiterated that the former husband would remain in contempt of court until he was able to purge himself of that contempt by beginning to pay a portion of his child-support and alimony arrearage.
The Wilmores appealed, asserting that the former wife had failed to join the former husband as a party in the declaratory-judgment action despite his being, in their view, an indispensable party. In addition, the Wilmores assert that the trial court erred in failing to grant their motion to dismiss, in vesting sole title in the former marital residence in the former wife, *705 and in determining that the former husband’s father was in contempt of court.
The Wilmores are correct that, under Alabama law, the duty to join necessary parties is ordinarily placed upon the plaintiff in an action. See Ex parte Izundu, 568 So.2d 771, 773 (Ala.1990); see also Walden v. ES Capital, LLC, 89 So.3d 90 (Ala.2011), and Hodge v. State, 643 So.2d 982 (Ala.Civ.App.1993). It is axiomatic that declaratory-judgment actions,are only binding on the parties to the action. See B.W.T. v. Haynes & Haynes, P.C., 20 So.3d 815, 821 (Ala.Civ.App.2009). Although there is no prescribed formula to be applied in determining whether a party is indispensable, see, e.g., Melton v. Harbor Pointe, LLC, 57 So.3d 695, 700 (Ala.2010), we do not agree with the Wilmores that the former husband was an indispensable party to the declaratory-judgment action.
The former wife sought an adjudication of the total amount she owed the Wilmores on the debt secured by the mortgage on the former marital residence. Although the trial court sought testimony from the former husband regarding what portion of the debt owed to the Wilmores had been retired during the marriage, that information was not produced, and the former husband’s presence was not necessary for the resolution of the pertinent issue: what amount was owed to the Wilmores at the time of the divorce. In fact, the 2005 divorce judgment specifically terminated the former husband’s interest in the former marital residence, awarding the property to the former wife subject to repayment of the remaining debt secured by the mortgage on that property. Thus, we conclude that the former husband does not meet the criterion of an indispensable party; that is, he is not a party whose interest in the controversy is “‘of such a nature that a final [judgment] cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.’ ” J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d 50, 52 (Ala.1983) (quoting 1 Champ Lyons, Alabama Practice, Rules of Civil Procedure at 389 (1973)). The trial court’s judgment is not erroneous on the basis that the former husband was not a party to the action.
The Wilmores also insist that the trial court erroneously failed to grant their motion to dismiss the declaratory-judgment action that was filed one day before the final hearing. The Wilmores posit that, because they asserted in that motion that they had relinquished all interest in the former marital residence, the trial court lost jurisdiction over the matter at that time. The problem with the Wil-mores’ position is two-fold. First, although it is true that the former wife sought a judgment declaring the amount of debt owed on the note held by the Wil-mores, the Wilmores’ motion to dismiss contained a photocopy of an unrecorded Indiana quitclaim deed purporting to convey the former marital residence to the former husband and the former wife. That document, in and of itself, did not divest the trial court of jurisdiction over the former marital residence, which had always been located in Alabama. Because the former marital residence was awarded to the former wife in the 2005 divorce judgment; because a trial court retains the power to enforce its judgments, see Patterson v. Patterson, 703 So.2d 372, 372 (Ala. Civ.App.1997), and Hall v. Hall, 485 So.2d 747, 749 (Ala.Civ.App.1986); and because the former wife’s declaratory-judgment action was initiated to enable her to comply with the terms of the divorce judgment, we conclude that the trial court could properly proceed to trial on the merits of the case.
*706 Moreover, at the previous hearing, the trial court had instructed the Wilmores to provide certain financial records within a specified time or face the penalty of contempt sanctions. The Wilmores had never supplied the documents requested by the trial court; thus, the contempt issue remained pending at the time of the hearing. We conclude, therefore, that the trial court did not err in denying the Wilmores’ motion to dismiss.
The Wilmores next assert that the trial court erred in reforming the title to the former marital residence to reflect the former wife’s sole ownership of that property without any outstanding liens.[2] They argue that the trial court could not ignore the terms of the sales document by which the former wife and the former husband had agreed to purchase the former marital residence with a note, secured by a mortgage, held by the Wilmores. Clearly, if the Wilmores divested themselves of all interest in the former marital residence, acknowledging complete satisfaction of the outstanding indebtedness associated with that property, then the Wilmores have no standing to challenge any action taken by the trial court regarding that property. A party lacks standing to invoke the power of the court in the absence of “a concrete stake in the outcome of the court’s decision.” Brown Mech. Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala.1983); see also Guyton v. Hunt, 61 So.3d 1085, 1091 (Ala.Civ.App.2010). Having presented the trial court with documentation that appears to resolve both the amount of indebtedness and the Wilmores’ interest regarding the former marital residence, we conclude that the Wilmores have conclusively demonstrated that they have no “stake in the outcome of the court’s decision.” Brown, 431 So.2d at 937. That portion of the Wilmores’ appeal is therefore dismissed for lack of standing.
Finally, the Wilmores challenge the trial court’s determination that the former husband’s father was in contempt of court for failing to comply with previous orders of that court. Alabama law concerning our standard of review in contempt cases is well settled.
“The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court’s contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence. Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App. 2006) (affirming a trial court’s decision not to hold a parent in contempt for failure to pay child support when the parent testified that he had deducted from his monthly child-support payment the amount he had expended to buy clothes for the children).”
Poh v. Poh, 64 So.3d 49, 61 (Ala.Civ.App. 2010). Moreover,
“Rule 70A, Ala. R. Civ. P., has governed contempt proceedings in civil actions since July 11, 1994. Rule 70A(a)(2)(D) defines ‘civil contempt’ as a ‘willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.’ ”
Stamm v. Stamm, 922 So.2d 920, 924 (Ala. Civ.App.2004). To hold a party in con *707 tempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or (D) (civil contempt), the trial court must find that the party willfully failed or refused to comply with a court order. T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).
The trial court in this case specifically determined that the former husband’s father had been warned that he would suffer contempt sanctions if he did not file the necessary financial documents with the court by a specific date. The record is clear that those documents were not filed with the court. In its judgment, the trial court noted that the former husband’s father “ha[d] actively and willfully ignored the orders of [that] court,” ordered him to be “incarcerated for a period of 5 days for each week that lapsed after the court’s extension [of time to file the requested documents],” and noted that a total of 20 weeks had passed, meriting incarceration for a total period of 100 days. In addition, the trial court determined that the former husband’s father was in contempt of court for refusing to appear at the final hearing on the merits, warranting an additional 5 days’ incarceration. However, the judgment also noted that the former husband’s father could purge himself of that contempt finding “by producing said documents and appearing personally before [the trial court and] subjecting himself to examination regarding said documents.”
The former husband’s father relies on one decision, Lowe v. Lowe, 561 So.2d 240 (Ala.Civ.App.1990), to support his contention that failing to provide the documents constitutes only one instance of contempt, not several. His reliance on that case is misplaced. This court reversed a 30-day sentence of incarceration for contempt in Lowe because this court was unable to determine which 6 specific occasions of disobedience were being punished by the maximum of 5 days’ incarceration. Lowe, 561 So.2d at 242. In the instant case, the trial court specifically determined that 20 weeks had elapsed since the deadline to produce the financial documents and multiplied that figure by 5, for a total contempt sanction of 100 days of incarceration. The instant case is more akin to Shonkwiler v. Kriska, 780 So.2d 703 (Ala.Civ.App.2000), wherein the basis of the trial court’s order of 30 days’ incarceration could be readily determined from the findings of fact contained in the judgment. Because the trial court determined that the former husband’s father had been in contempt of court for 20 weeks (the period between the date the documents were due and the date of trial), we conclude that the trial court could properly assess the maximum penalty of 5 days for each week of contempt pursuant to Rule 70A(a)(2)(C)(ii), Ala. R. Civ. P.
The former husband’s father also contends that he could not be held in contempt for failing to appear because his presence at trial was unnecessary for two reasons. First, he claims that, having divested himself of any interest in the former marital residence, he was no longer a viable party to the action. The problem with that argument is, as discussed previously, that the former husband’s father was on notice he would be held in contempt of court if he did not produce certain financial documents for the trial court’s review by a specific date before trial. Next, the former husband’s father asserts that his counsel served as his agent to handle any aspects of the case that might still pertain to him. He correctly notes that an attorney is generally regarded as “ ‘a special agent, limited in duty and authority to the vigilant prosecution or defense of the rights of the client.’ ” Williams v. North Alabama Court Reporting Serv., 833 So.2d 622, 626 (Ala.Civ.App. 2001) (quoting Robinson v. Murphy, 69 *708 Ala. 543, 547 (1881)). However, as noted previously, trial courts have the power to punish for contempt in the interest of protecting and enforcing their judgments. See, e.g., Brickley v. Brickley, 586 So.2d 214 (Ala.Civ.App.1991). In Brickley, the father failed to appear in court, and evidence indicated that he had no intention of abiding by the trial court’s orders. Brick-ley, 586 So.2d at 215. Similarly, in this case, the trial court determined that the former husband’s father had lied to the court; that he had refused to produce documents the court deemed necessary to a proper disposition of the declaratory-judgment action; and, apparently, that he would not abide by the trial court’s orders or jurisdiction over the matter by failing to appear. We cannot conclude that the trial court erred in determining the former husband’s father to be in contempt of court even though his attorney was present at trial.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. The former husband appealed from that contempt judgment; this court affirmed the trial court's judgment without an opinion. See Wilmore v. Wilmore (No. 2090374, May 20, 2011), — So.3d - (Ala.Civ.App.2011) (table).

. We note that in the divorce judgment the trial court divested the former husband of all interest in the former marital residence and ordered the wife to pay the outstanding debt on the note held by the Wilmores. Thus, -we conclude that the trial court could properly have disregarded the Wilmores' and the former husband's attempt to reallocate their interests in the former marital residence.