396 So.2d 1353 (1981)
UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff-Appellee,
v.
SANDERS DRILLING & WORKOVER COMPANY, INC., Defendant-Appellant.
No. 8091.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
Rehearing Denied April 27, 1981.
*1354 Landry, Watkins & Bonin, Alfred S. Landry, New Iberia, for defendant-appellant.
Caffery, Oubre, Gibbens & Blackwell, Jerry A. Oubre, New Iberia, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
This is a suit to collect additional insurance premiums under policies of insurance issued by United States Fidelity and Guaranty Company (USF&G) to the defendant Sanders Drilling and Workover Company, Inc. (Sanders). Trial was by a jury which found in favor of USF&G and against Sanders. The judgment was for the sum of $32,497 plus interest at the rate of 7% per annum from date of judicial demand which was July 21, 1976, until paid and for all costs. Sanders appealed from the judgment.
USF&G issued the policies under the retrospective premium plan, sometimes referred to as a "retro-risk" policy plan. Under such a plan the insured pays a premium based upon what an ordinary standard premium would be for a business risk of that type and size. At fixed intervals the records of the insured are audited to confirm that the amount of the insured's payroll and other data conforms to the periodic reports submitted by the insured. At the same time the insurer keeps records reflecting the sums expended by the insured during each of the policy periods. Under the retrospective premium plan, periodic audits are made to determine what the insured's actual premium would be based upon experience under the plan.
Under the plan an insured initially pays a premium estimated to be what experience would require the insured to pay. However, actual experience will indicate that the risks encountered were either greater or lesser than originally projected. Based upon the actual experience the insured will either pay additional premiums or receive a refund. If the insured has a "good" year in which the insurer pays less than anticipated during the period being audited, the insured will receive a refund for a certain portion of premiums previously paid. On the contrary, if the insured has a "bad" year and more claims are paid than anticipated on behalf of the insured, then the insured will be required to pay additional premiums to the insurer. A minimum and maximum are applied to this procedure. Under the minimum and maximum provision, regardless of how little is paid on claims, a minimum amount of premium will be owed during an audit period. On the other hand, if the insured has a very bad year and a large amount is paid by the insurer on behalf of the insured, there is a maximum amount of additional premiums which will be due and owing to the insurer.
*1355 In the first two adjustment periods, Sanders had "good" years and received refunds. The first refund was $32,841 and the second was $56,905. The third adjustment period, keyed into the date October 3, 1975, indicated that Sanders' loss experience during the previous period was not as good as that of prior periods. On this third adjustment Sanders owed USF&G additional premiums of $30,068. A final adjustment as of August 18, 1976, indicated an additional premium of $2,429 owed by Sanders to USF&G. Thus a total of $32,496 was owed by defendant to plaintiff. This amount Sanders refused to pay. As a result USF&G filed the present suit to recover $32,496 with legal interest and costs.
Sanders refused to pay the additional premiums on the ground that USF&G had settled a very large claim against Sanders which USF&G should not have settled. Essentially, the issue in this case is whether or not USF&G should have settled the claim and whether or not it was settled at a reasonable figure.
Sanders questions the propriety of one settlement made by USF&G. This was settlement of a claim asserted in a suit entitled "Curtis D. Book v. Sanders Drilling and Workover Company, Inc.," which was Civil Action Number 74,299 on the docket of the United States District Court for the Eastern District of Louisiana. USF&G, as the insurer, undertook the defense of this case. USF&G engaged counsel. Initially this counsel thought the claim had little value and could be successfully defended. USF&G ultimately settled the case three days before trial by jury for a settlement figure of $54,000.
In defense of the present suit Sanders contends that the settlement made by USF&G with Curtis D. Book was unreasonable. Sanders maintains that the case should have been tried and not settled at all. Sanders takes the position that it had a right to approve the Book settlement, that it had not done so and no settlement could be made without its approval.
When USF&G sued Sanders for the additional premium, Sanders filed a reconventional demand seeking damages which it allegedly sustained as a result of the action taken by USF&G.
As noted above, the claim of USF&G against Sanders and the reconventional demand of Sanders against USF&G was tried before a jury in the State Court, the Sixteenth Judicial District Court for the Parish of Iberia. In effect, the merits of the claim of Curtis D. Book against Sanders Drilling and Workover Company, Inc., were tried in the jury case between USF&G and Sanders. The jury in the State court determined that the settlement was reasonable. On that basis judgment was rendered in favor of USF&G for the premiums it claimed from Sanders. This appeal is from the judgment entered on that verdict.

SPECIFICATIONS OF ERRORS
Sanders as the defendant-appellant has assigned various specifications of error and listed the issues. We agree with counsel for plaintiff-appellee that these can be summarized into three broad categories as follows:
1. Was the consent of Sanders to the Book settlement required?
2. Was the settlement with Curtis D. Book reasonable?
3. Did the trial court err with respect to the verdict form submitted to the jury and did it err in the jury charges given?
The actual specification of errors as listed in the brief on behalf of defendant-appellant are appended to this opinion as Appendix I.

FACTS
Curtis D. Book was hurt on a rig belonging to Sanders alleged to be located in the Gulf of Mexico. Curtis D. Book alleged in his petition that the accident occurred when he slipped on ice in a freezer. The defendant argued that the rig was not designed for and never worked in the Gulf of Mexico. Also, defendant took the position that the freezer in the galley of the rig was a common upright freezer which a man could not get into. Consequently, Book could not have fallen on ice in the freezer. Based on *1356 such factors and others, the attorney representing USF&G as insurer of Sanders initially took the position that the claim should be defended and was not a dangerous case. As the case developed, it took a different posture.
To begin with, the petition filed in the federal suit was filed by Book's counsel who was apparently not clear as to some of the facts. It appears that the employer' first report of the injury prepared by Sanders dated October 16, 1974, described the accident as follows:
"Employee (Cook) was getting meat from freezer, small pieces of frost from freezer fell to floor, employee was handling packages of meat, slipped on damp-(frost) floor."
It appears that Book was actually working as a cook at the time on Sanders' rig at Bastian Bay near Empire, Louisiana. There seems to be little question but that Book actually slipped on frost that fell on the floor from the freezer. As his left foot slipped out from under him, he hit his knee on the floor, his head on the stove, and a box of meat fell onto his genital area.
Much of defendant-appellant's argument centered around the fact that within days before going on the rig Curtis D. Book was advised by his physician that he required surgery for an old condition of the spine. This spinal area was injured in the fall. Therefore, Sanders takes the position that the back condition was already there and was not affected by the fall. Unquestionably Book was injured in his genital area. The jury in this case heard all of the medical evidence adduced for the federal trial. Preparations of defense of the case presented issues of whether or not the accident actually occurred and whether or not Book sustained injury. However, the progress of discovery disclosed witnesses whose testimony indicated that Book would unquestionably make a good case for the establishment of an accident. Also, the medical testimony developed a substantial case in plaintiff's favor.
As a result of all of the foregoing USF&G, feeling that it was faced with a dangerous case, elected to make a settlement.
In the conduct of the case all communications between the attorney engaged by USF&G and Sanders continued to indicate that the case was not one which was either valid or of a serious nature. Sanders contends that it was never advised that the case was going to be settled and that its permission to settle was not sought or given. Sanders also maintains it instructed USF&G not to settle the case.

WAS THE CONSENT OF SANDERS TO THE BOOK SETTLEMENT REQUIRED?
Sanders' first contention in this phase of the appeal is that under the contract with USF&G the latter was obligated to consult with Sanders and not to make any settlements without its approval. We fail to find that the contract grants any such right to Sanders. Nevertheless, Sanders contends that USF&G should not have made any settlement at all and should have defended the case.
Sanders cites no authority for its contention and points to no provisions of the policies in question which establish its right to control settlements. Sanders asserts that the only Louisiana case it has been able to find involving a policy of retrospective insurance is Insurance Company of North America v. Binnings Construction Co., Inc., 288 So.2d 359 (La.App. 4th Cir. 1974). Defendant-appellant does not build its case on this authority and it gives Sanders no comfort.
Absent authority for Sanders' position that it has a right to control settlements, Sanders urges that the situation is akin to that where a liability insurer owes a duty not to unreasonably refuse to settle within policy limits and not to expose the insured to an excess judgment. Under defendant-appellant's analysis the premium arrangement resulted in USF&G actually settling with the "insured's money". See the Binning case cited above for a judicial elaboration of this thesis. In brief Sanders asserts:

*1357 "There are many cases which hold that an insurer will be held to have acted in bad faith if a settlement agreement is reached which exceeds the policy limit and the insured was not informed of such offer prior to the settlement. Ward v. State Farm Mutual Automobile Insurance Company, 359 [539] F.2d 1044 (CA 5 1976); Roberie v. Southern Farm Bureau Casualty Insurance Company, 250 La. 105, 194 So.2d 713 (Supreme Court 1969); Wooten v. Central Mutual Insurance Company, 166 So.2d 747 ([La.App.] CA 3 1964); Ging v. American Liberty Insurance Company, 423 F.2d 115 (CA 5 1970)."
Assuming that the unique scheme established under retrospective premium adjustment policies does put the insurer in a position of having a conflict of interest and that the insurer owes a duty to act to the insured's advantage, the ultimate inquiry becomes whether or not the settlement was in fact reasonable. This was the test applied in Binning. As in Binning we find here that the evidence does not establish an agreement, even as an addendum to the contract, orally or otherwise, to consult with Sanders prior to making a settlement. We certainly find no power granted to Sanders to veto a proposed settlement as a right to force the insurer to go to trial rather than settle. Having reached these conclusions, we proceed to consider whether the settlement made was reasonable under the circumstances.[1]

WAS THE SETTLEMENT WITH CURTIS D. BOOK REASONABLE?
Defendant-appellant urges that any settlement was unreasonable considering the appraisal which counsel for USF&G made of the case. In this respect Sanders fails to recognize that the elements and circumstances of the case known to the attorney defending Book's suit began to change in Book's favor as discovery and trial preparations progressed. Sanders contends that the attorney's opinion never changed. In brief counsel for Sanders asserts "Sanders objected to paying the money because USF&G capitulated to what was a fraudulent claim." The issue is not what the attorney basically believed to be the actual facts but rather what facts were likely to be accepted on trial of the case by the trier of fact. This involves application of trial experience in estimating the likely outcome of a trial and balancing the value of a given compromise settlement against the uncertain risk of trial which might result in a higher award than settlement, especially where liability just prior to trial had begun to appear probable. There is ample evidence to support the conclusion that the position for the defense of Book's claim had deteriorated by trial time to such an extent that it was prudent to effect a reasonable settlement.
On the basic question of whether or not the facts as they developed justified settlement in the amount of $54,000 justification was adequately established. The jury, in this case hearing all of the medical evidence and all of the deposition testimony of the witnesses to the accident and of those parties to whom the accident was reported, concluded that a settlement of $54,000 was reasonable. We are unable to conclude that the jury was clearly wrong based on the evidence presented to them.
We have not concerned ourselves in this case as did the Court of Appeal for the *1358 Fourth Circuit in Binning, with who bears the burden of proof on the issue of reasonableness or with the question of the shifting of the burden of proof. USF&G carried the burden of proof to our satisfaction. For that reason we do not concern ourselves with the question of who bore the initial burden or questions of shifting of the burden.

DID THE TRIAL COURT ERR WITH RESPECT TO THE VERDICT FORMS SUBMITTED TO THE JURY AND IN THE JURY CHARGES GIVEN?
Consistent with its claim that no settlement at any price should have been made, Sanders contends that the trial court erred in the form of jury verdict submitted to the jury.
After trial on the merits before a jury, the following special jury verdict form was submitted to the jury and was answered as indicated:[2]
"SPECIAL JURY VERDICT
1. Was the settlement made by the United States Fidelity and Guaranty Company with Curtis Book reasonable?
 X 
 YES
 _____
 NO
If the answer to the foregoing question is yes, you may stop there. If your answer is no, then answer only one of the following:
a. What amount would have
been reasonable? $_____
b. There should have been
no settlement: _____
July 17, 1980 /s/ Ronald C. Bienvenu
 JURY FOREMAN"
In brief on behalf of Sanders the following contention is made:
"By handling the special jury verdict as it did, the court isolated the question for the jury as a question of quantum, thereby misleading the jury into thinking that only the nature and seriousness of the plaintiff's injuries were involved, whereas there was also involved a consideration of whether or not there should have been a settlement in view of doubts as to liability and a consideration of whether or not U.S.F.&G. fulfilled its duty to Sanders by making a settlement in disregard of the instructions by Sanders not to settle.
"In order to be clear, the special jury verdict should have read as follows:
(1) Should United States Fidelity and Guaranty Company have made a settlement with Curtis Book?
 Yes _____
 No _____
If the answer to the foregoing question is no, you may stop there. If the answer is yes, then answer the following:
(2) Was the amount of the settlement reasonable?
 Yes _____
 No _____
If the answer to the foregoing question is yes, you may stop there. If your answer is no, then answer the following:
(3) What amount would have been reasonable?
 $ ________
"The special jury verdict as prepared by the court, by inviting the jury to give consideration only to the dollar level of the settlement and allowing it to pretermit the question of whether or not there should have been a settlement at all, was misleading to the jury and prejudicial to the defendant."
We believe defendant-appellant's argument in this regard is casuistic, or at least strained. Sanders urges that it was improper not to ask as the opening question whether or not any settlement at all should have been made. We fail to see that this argument has substance. Considering the special jury verdict form submitted, we do not see how the jury could have failed to have understood what it was called upon to decide.
*1359 The first question in the form submitted consisting of "Was the settlement made by the United States Fidelity and Guaranty Company with Curtis Book reasonable?" would obviously be answered "no" if the jury had been of the opinion that no settlement at all should have been made. Moreover, by reading the question on the special jury verdict form in its entirety, it was made clear to the jury that, if they thought no settlement should have been made, the form was specifically tailored so that such a verdict could be rendered. Under these circumstances, the jury would have checked the "no" blank under the first question and would have checked "b" under the second question.
For the reasons given we do not believe that the trial court erred in providing the jury with the particular special verdict form which it did.
Defendant-appellant claims that the trial court erred in failing to give its requested jury charges numbered 2, 3, and 4.
Defendant's requested jury charge number 2 is as follows:
"The insurance policy in this case having been prepared by the plaintiff, United States Fidelity and Guaranty Company, all ambiguities should be construed against it.
"Doubtful language in the policy should be construed in favor of Sanders Drilling & Workover Company, Inc."
On the basis of the record we do not feel that the requested charge number 2 was relevant. Defendant-appellant has not seriously argued that the policy as written proved any of the rights for which it contends. It has not indicated any ambiguities in the policy in that regard.
Requested jury charge number 3 reads as follows:
"United States Fidelity and Guaranty Company ultimately bears the burden of proving the unreasonableness of the settlements made by it in this case."
In view of the fact that USF&G did carry the burden of proof in this case, we find that there was no error in the failure of the trial court to this requested jury charge.
Sanders' requested jury charge number 4 has reference to relief sought in its reconventional demand in which it stated that it was "entitled to reformation to the policies issued by United States Fidelity and Guaranty Company to respondent to set down the understanding and agreement which respondent had with plaintiff's agent, to the effect plaintiff would consult with and keep respondent informed with all phases of its insurance program and would not make any payments or settlements to claimants without respondents prior written approval." Defendant-appellant's requested jury charge number 4 reads as follows:
"If an insurance agent knows of the policyholder's true intention as to coverage desired, insurance company is bound by the agent's knowledge, and a policy erroneously issued will be reformed so as to conform to the original intention.
"If the insurance policy issued by United States Fidelity and Guaranty Company to Sanders Drilling and Workover Company, Inc. in this case did not truly state the agreement of Sanders Drilling and Workover Company, Inc. with the agents representing United States Fidelity and Guaranty Company, then the policy should be reformed to show the true intent of the parties.
"If you find that the policy should be reformed and under the policy as reformed United States Fidelity and Guaranty Company should have consulted Sanders Drilling and Workover Company, Inc. and obtained its authorization and approval before paying money under the policy to Curtis D. Book, then there can be no recovery in this case."
In view of the state of the evidence the trial judge was correct in refusing to give this instruction. A charge, even if it is a correct statement of the law, must be based on evidence adduced in the case in order for the jury to make the conclusion permitted in the charge.[3]Guerra v. W. J. *1360 Young Construction Co., Inc., 165 So.2d 882 (La.App. 4th Cir. 1964) writ refused, 167 So.2d 676 (La.1964); Jackson v. West Jefferson General Hospital, 245 So.2d 724 (La. App. 4th Cir. 1971); Prejean v. Hanover Insurance Company, 233 So.2d 606 (La.App. 3rd Cir. 1970), writ refused, 236 So.2d 32 (La.1970); Barrois v. Service Drayage Company, 250 So.2d 135 (La.App. 4th Cir. 1971), application denied, 253 So.2d 66 (La.1971).
No evidence in support of the alternative reconventional demand for reformation was adduced which established an agreement to give Sanders control over settlements. The policies gave that control to the insurer, USF&G. Larry Sanders, who examined the policies for Sanders, testified merely that his company was to be "consulted" concerning handling of claims and specifically denied that there was any agreement that his company would have control over settlements. Tr. 1088 and 1089, Vol. 7. Tommy Sanders testified that USF&G did not obtain Sanders' consent to settle, but he did not testify there was an agreement requiring such a consent. Tr. 1174, Vol. 8.
Under the circumstances the trial court did not commit error in failing to give Sanders' requested jury charge number 4.
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal shall be paid by defendant-appellant.
AFFIRMED.

APPENDIX I

"SPECIFICATION OF ERROR
"Defendant-Appellant, Sanders Drilling and Company, Inc., contends that:
"The judgment is contrary to the law and the evidence, the insurer having failed to consider the substantial duty owed by an insurer to its insured in a case in which the insurer was dealing only with the insured's money, the insurance company attorney believed that the claim was a fraud, and the insurer ignored its insured's specific request not to settle the case.
"The judgment is contrary to the law and the evidence, the settlement made by United States Fidelity and Guaranty Company with Curtis Book being unreasonable in the light of the facts known to the insurer, United States Fidelity and Guaranty Company.
"The trial court erred in failing to give instructions requested by Sanders Drilling and Workover Company, Inc. concerning the construction against United States Fidelity and Guaranty Company of ambiguities and doubtful language in the policy of insurance.
"The trial court erred in failing to give requested jury charge number 3 and to place the burden of proof of reasonableness on the insurer, substituting instead a statement that there is a presumption of reasonableness in favor of an insurer.
"The trial court erred in failing to give requested jury charge number 4 of Sanders Drilling and Workover Company, Inc. regarding the reformation of the policy of insurance issued by United States Fidelity and Guaranty Company.
"The trial court erred in its preparation of the special jury verdict, the verdict being misleading and inviting the jury to comment on the reasonableness of the settlement, rather than to consider first whether or not there should have been a settlement at all."
NOTES
[1] The tenor of Sanders' brief and oral argument is that aside from the right of control or veto of settlement with claimants there was an obligation owed by USF&G to "consult" with Sanders before making settlements with claimants. Definitely Sanders had no veto authority. While we doubt that a preponderance of evidence establishes a duty to consult, we are not certain as to what consultation would comprehend. Each of the policies contains a provision stating that "the company [USF&G] may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." The evidence shows that Sanders was kept fairly well informed and even advised that settlement was contemplated. Since Sanders had no veto power and could not have blocked the settlement, and since the evidence is cloudy as to whether the right to consultation existed, we will not risk expressing dicta by attempting to define consultation. Defendant-appellant seems to feel that its rights were violated because it was not consulted. Assuming Sanders' rights were violated in this respect, we are not sure just what injury or damage would arise from such a violation.
[2] The vote was 9 to 3 in favor of USF&G, and judgment was rendered in accordance with the verdict on July 18, 1980, in favor of USF&G and against Sanders.
[3] We express no opinion as to whether the requested charge represents a correct statement of law.