ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| t This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondents, Donald S. Zuber and Catherine Smith Nobile, attorneys licensed to practice law in Louisiana.
UNDERLYING FACTS
Elsie Brown filed a medical malpractice claim against Michael Teague, M.D. in *31 1995. Dr. Teague’s malpractice insurer, St. Paul Insurance Company (“St. Paul”), assigned the defense of the claim to Seale, Smith, Zuber & Barnette, LLP. The law firm had previously handled at least ten medical malpractice cases on behalf of Dr. Teague, but these cases had all been dismissed with none having been settled or taken to trial. After the medical review panel found that no breach of professional standards occurred, Ms. Brown filed suit against Dr. Teague.
Respondent Donald Zuber, a partner of the Seale, Smith, Zuber & Barnette firm, initially handled the Brown litigation on behalf of Dr. Teague. Mr. Zuber answered the lawsuit, denying liability and requesting a trial by jury. Mr. Zuber was in regular contact with Dr. Teague until 1998, when he transferred the file to his partner, respondent Catherine Smith No-bile. During the time that Ms. Nobile | ^represented Dr. Teague, she inadvertently failed to timely file a jury bond, and as a result, a jury trial was no longer available to Dr. Teague. Ms. Nobile did not inform Dr. Teague of this development, but she did inform St. Paul, to whom she also provided periodic updates concerning the progress of the case. Following a mediation in October 1999, St. Paul settled the malpractice claim against Dr. Teague for $50,000. Notably, Dr. Teague’s policy with St. Paul did not contain a “consent to settle” clause, and therefore the insurer was not required to obtain Dr. Teague’s consent to the settlement.[1] Ms. Nobile left a message with Dr. Teague’s office after the mediation to advise him that the case had been settled, but she did not inform him of the mediation before it was held.
Dr. Teague was unhappy with the outcome of the medical malpractice case. He subsequently filed a legal malpractice suit against respondents and their law firm. Following a trial in 2005, a jury found in favor of Dr. Teague. Respondents filed a post-trial exception of peremption and prescription and a motion for judgment notwithstanding the verdict, both of which were denied by the trial court. On appeal, the First Circuit granted the exception of peremption and reversed the trial court’s judgment in favor of Dr. Teague. Thereafter, Dr. Teague applied to this court, which granted writs and reversed, finding Dr. Teague’s cause of action against respondents was not perempted. Teague v. St. Paul Fire & Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266. On remand to the court of appeal for consideration of respondents’ assignments of error, the court of appeal found in favor of respondents and dismissed Dr. Teague’s legal malpractice suit with prejudice. Teague v. St. Paul Fire & Marine Ins. Co., 06-1266 (La.App. 1st Cir.4/7/09), 10 So.3d 806, writ denied, 09-1030 (La.6/17/09), 10 So.3d 722.
DISCIPLINARY PROCEEDINGS
In September 2009, the ODC filed formal charges against respondents, alleging they violated the following provisions of the Rules of Professional Conduct in their representation of Dr. Teague: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.7 (conflict of interest) and/or 1.16 (terminating the representation of a client), 5.1 *32 (responsibilities of partners, managers, and supervisory lawyers), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Respondents answered the formal charges and denied any ethical misconduct. The matter then proceeded to a formal hearing on the merits, conducted by the hearing committee in April 2010.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above. Based upon those facts, the committee determined that both respondents violated Rule 1.4 of the Rules of Professional Conduct. As to Mr. Zuber, the committee found he kept Dr. Teague reasonably informed at the outset of the representation. However, he never withdrew from the representation, and therefore, upon learning that his partner Ms. Nobile had failed to file the jury bond, Mr. Zuber was required to ensure that Dr. Teague was informed of this development. The committee found Ms. Nobile’s violation of Rule 1.4 to be more serious, as she failed to advise Dr. Teague that a jury bond had not been timely |4filed. She also failed to copy Dr. Teague with the evaluation letters that she provided to St. Paul, and she failed to notify him that the matter was scheduled for mediation. The committee found the remaining charges were not proven by clear and convincing evidence.
The committee determined that the applicable baseline sanction in this matter is reprimand. In aggravation, the committee found the following factors: refusal to acknowledge the wrongful nature of the conduct and substantial experience in the practice of law (Mr. Zuber was admitted in 1960 and Ms. Nobile was admitted in 1991). In mitigation, the committee found the following factors: absence of a prior disciplinary record and character or reputation.[2]
Under these circumstances, the committee recommended that Ms. Nobile be publicly reprimanded, and that Mr. Zuber be admonished.[3]
Both respondents and the ODC filed objections to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After reviewing the matter, the disciplinary board determined that the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. The board also determined that the committee correctly applied the Rules of Professional Conduct, except that the board found Ms. Nobile also violated Rule 1.3 based on her negligent failure to timely file the jury bond. Because respondents were found to have violated the Rules of Professional Conduct, the board determined they also violated Rule 8.4(a).
| sThe board determined that respondents violated duties owed to their client and to the legal profession. They violated their duty to the legal profession by failing to uphold one of the most fundamental standards of ethical conduct. They violated their duty to their client, Dr. Teague, by negligently failing to communicate and *33 keep him reasonably informed as to the status of his case or St. Paul’s intent to settle. As a result of respondents’ negligence, Dr. Teague was deprived of the opportunity to hire independent counsel to advocate his position in the event it differed from that of St. Paul. Dr. Teague suffered actual injury as a result of the reporting of the settlement to a nationwide data bank.[4] He also incurred significant legal fees to pursue his legal malpractice action against respondents.
Based on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the applicable baseline sanction is reprimand. In aggravation, the board found refusal to acknowledge the wrongful nature of the conduct and substantial experience in the practice of law. In mitigation, the board found the following factors: absence of a prior disciplinary record and character or reputation.
Considering the prior jurisprudence of this court, the board recommended that Mr. Zuber be publicly reprimanded and that Ms. Nobile be suspended from the practice of law for six months, fully deferred, subject to a twelve-month period of unsupervised probation. The board also recommended that Ms. Nobile and Mr. Zuber each be assessed with half of the costs and expenses of this proceeding.
One board member dissented and would recommend that both respondents be publicly reprimanded for failing to communicate with Dr. Teague.
|fiBoth respondents and the ODC filed objections to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, 11(G)(1)(b).
DISCUSSION
In this case, we are called upon to decide the scope of a lawyer’s duties to a client, where the client’s rights are contractually limited by the terms of the client’s insurance policy. This issue has not been addressed in detail in our disciplinary jurisprudence.[5]
The crux of the charges against respondents revolves around their alleged failure to properly communicate with Dr. Teague as required by Rule 1.4. However, we find Rule 1.2 is the more specific rule governing a lawyer’s duties in a limited representation context. At the time of this case, Rule 1.2(b) permitted a lawyer to “limit the objectives of the representation if the client consents after consultation.”[6] In the context of the tripartite relationship between lawyer, insurer, and insured, we interpret Rule 1.2 as requiring a lawyer who will represent the insured at the direction of the insurer to make appropriate disclosure sufficient to apprise the insured of the limited nature of the representation as well as the insurer’s right to control the defense in accordance with the terms of the insurance contract.
As written, Rule 1.2 does not provide much detail concerning the nature of the *34 consultation the attorney must provide in order to secure the client’s consent to the limited representation. However, we find guidance in ABA Formal Ethics 17Opinion 96-403 (1996), which discusses Rule 1.2(c) of the Model Rules of Professional Conduct [7] as follows:
A short letter clearly stating that the lawyer intends to proceed at the direction of the insurer in accordance with the terms of the insurance contract and what this means to the insured is sufficient to satisfy the requirements of Rule 1.2 in this context. We do not believe extended discussion is required or, indeed, that any oral communication is necessary. As long as the insured is clearly apprised of the limitations on the representation being offered by the insurer and that the lawyer intends to proceed in accordance with the directions of the insurer, the insured has sufficient information to decide whether to accept the defense offered by the insurer or to assume responsibility for his own defense at his own expense. No formal acceptance or written consent is necessary. The insured manifests consent to the limited representation by accepting the defense offered by the insurer after being advised of the terms of the representation being offered.
Once the lawyer has apprised the insured of the limited nature of his representation and that he intends to proceed in accordance with the directions of the insurer, he has satisfied the requirements of Rule 1.2(c). A prudent lawyer hired by an insurer to defend an insured will communicate with the insured concerning the limits of the representation at the earliest practicable time. For example, basic information concerning the nature of the representation and the insurer’s right to control the defense and settlement under the insurance contract reasonably could be incorporated as part of any routine notice to the insured that the lawyer has been retained by the insurer to represent him. Alternatively, so long as it is early in the representation, the lawyer may wait until there is some other reason for communicating with the insured in connection with the claim such as developing relevant facts, answering a complaint, responding to interrogatories, or scheduling a deposition. Failure to make appropriate disclosures near the outset of the representation may generate wholly unnecessary, but difficult, problems for the insured, the insurer, and the lawyer. Thus, if the lawyer fails to advise the insured of the limited nature of the representation and his intention to proceed in accordance with the directions of the insurer early in the representation, the lawyer may find himself trying to advise the insured of a ^proposed settlement at the last minute under short time constraints, when the insured will have little practical opportunity to reject the defense offered by the insurer and assume responsibility for his own defense. [Emphasis added.]
Consistent with this guidance, we interpret Rule 1.2 as requiring a lawyer who represents an insurer and insured in a case involving a “consent to settle” clause to advise the insured as soon as practicable (generally at the inception of representation) of the limited nature of the representation the attorney will provide to the insured. Once the lawyer has made ap *35 propriate disclosure to the insured of the limited nature of the representation being offered under the insurance contract and the insured indicates consent by accepting the defense, the lawyer may then proceed with the representation at the direction of the insurer in accordance with the terms of the insurance contract, including settling the claim within the limits of the policy at the insurer’s sole direction.[8] However, the lawyer should make efforts to keep the insured reasonably apprised of developments in the case. See Mitchum v. Hudgens, 533 So.2d 194, 202 (Ala.1988) (explaining that even though the insured has no direct financial interest when a settlement is within policy limits, “appointed counsel should keep his client, the insured, apprised of all developments in the case, including settlement negotiations”).
Turning to the facts of this case, it is apparent respondents did not consult with Dr. Teague in order to explain the limited nature of the representation as required by Rule 1.2. Nonetheless, considering the absence of any controlling jurisprudence from this court, the extent of the lawyer’s duties in this situation was not entirely clear. Both respondents testified they assumed Dr. Teague was already aware of the policy’s “consent to settle” clause based on his prior experiences in 19malpractice eases and did not believe any additional notice was necessary. While we now reject respondents’ position, we find their testimony supports the conclusion that their actions were taken in good faith and were not intended to cause prejudice to Dr. Teague.[9] Similarly, we accept Ms. Nobile’s testimony that her lack of communication with Dr. Teague, particularly with regard to the mediation, was inadvertent under the circumstances.
In summary, given the lack of controlling jurisprudence at the time of respondents’ actions in this case and considering the totality of the circumstances, we decline to find clear and convincing evidence of any violation of the Rules of Professional Conduct on their part. Accordingly, we will dismiss the formal charges. However, we take this opportunity to make it clear to respondents and all members of the bar that limited representation situations are fraught with potential dangers to all parties, as readily illustrated by the instant case. Henceforth, lawyers should be scrupulous in adherence to their obligations under Rule 1.2 to ensure that all clients in such a relationship are fully apprised of the nature of the representation and indicate consent by accepting the defense. Such communications will ensure that the client’s rights are protected and minimize any potential for future disagreement over the nature of the representation.
DECREE
Upon review of the findings and recommendations of the hearing committee and *36 disciplinary board, and considering the record, briefs, and oral argument, it is 11 (¡ordered that the formal charges against respondents, Donald S. Zuber and Cather- ■ ine Smith Nobile, be and hereby are dismissed.
Retired Judge ROBERT L. LOB RANO, assigned as Justice ad hoc, sitting for KIMBALL, C.J., recused.
Retired Judge HILLARY J. CRAIN, assigned as Justice ad hoc, sitting for KNOLL, J., recused.
JOHNSON, J., concurs in part, dissents in part, and assigns reasons.

 Retired Judge Robert L. Lobrano, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball, recused; retired Judge Hillary J. Crain, assigned as Justice ad hoc, sitting for Justice Jeannette T. Knoll, recused

. The policy of insurance which Dr. Teague obtained from St. Paul contained the following provision:
Well defend any suit brought against you for damages covered under this agreement. We’ll do this even if the suit is groundless or fraudulent. We have the right to investigate, negotiate and settle any suit or claim if we think that’s appropriate. [Emphasis added.]

. The committee also observed in mitigation that Mr. Zuber is now retired and Ms. Nobile is no longer practicing law; however, this finding was rejected by the disciplinary board, as "current occupation” is not enumerated as a mitigating factor in the ABA Standards.

. Under Supreme Court Rule XIX, § 10(A)(5), an admonition cannot be imposed after formal charges have been filed.

. The National Practitioner Data Bank is a repository for information concerning payments made on behalf of physicians in connection with medical liability settlements or judgments.

. We acknowledge there is some dicta in our plurality opinion in Teague v. St. Paul Fire & Marine Insurance Co., 07-1384 (La.2/1/08), 974 So.2d 1266, which discusses the duty of the lawyers in this case. However, in these disciplinary proceedings, we are not bound by the record developed in that civil case.

.The current version of this rule is set forth in Rule 1.2(c), which adds a requirement that the limitation on the scope of the lawyer’s representation be "reasonable under the circumstances" and that the client’s consent thereto be "informed.”

. At the time of this case, the language of Rule 1.2(c) of the Model Rules of Professional Conduct was contained in Rule 1.2(b) of the Louisiana Rules. The two rules are substantively identical.

. If the attorney knows that the insured objects to a settlement, the attorney may not settle the claim at the direction of the insurer without first giving the insured the opportunity to reject the defense offered by the insurer and to assume responsibility for his own defense at his own expense. However, in the instant case, neither Mr. Zuber nor Ms. No-bile knew that Dr. Teague objected to a settlement, as he candidly admits he "never did write or call anyone about that.”

. The fact that Dr. Teague was an "experienced medical malpractice defendant” is a factor which respondents could consider in determining the extent of the disclosure required by Rule 1.2 in a particular case; however, it would not be prudent to "assume that the insured understands or remembers, if he ever read, the insurance policy, or that the insured understands that his lawyer will be acting on his behalf, but at the direction of the insurer without further consultation with the insured." ABA Formal Ethics Op. 96-403 at 406.